Larry **PIERCE**, Appellee,

v.

Clyde **NELSON**, Janice Nelson, and Farm Bureau Mutual Insurance Company, Appellants.

No. 92–1558.

Supreme Court of Iowa.

Dec. 22, 1993.

Mark D. Sherinian and Kara D. Junkins of Hanson, Bjork & Russell, Des Moines, for appellants Clyde and Janice Nelson.

David A. McNeill of Morain, Burlingame, Pugh & Koop, West Des Moines, for appellant Farm Bureau Mut. Ins. Co.

Thomas R. Isaac and Michael H. Adams of Isaac & Adams Law Office, Des Moines, for appellee.

Richard J. Sapp and Eric P. Sloter of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for amicus curiae Iowa Medical Soc.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN and ANDREASEN, JJ.

NEUMAN, Justice.

This interlocutory appeal stems from a dispute over a treating physician's fee for deposition testimony. At issue is the enforcement of a protective order compelling the payment of a $500 per hour fee. Because we believe the protective order cannot be justified under this record, we reverse and remand.

Plaintiff Larry Pierce sued defendants, Clyde and Janice Nelson, for personal inju-

ries he sustained in an automobile collision.[1] During discovery, the defendants sought to depose Dr. Rodney Johnson, an orthopedic surgeon who had treated Pierce for his injuries. Dr. Johnson advised defense counsel that his fee for deposition testimony would be $500 per hour. Believing the fee was unreasonable, defendants wrote Dr. Johnson requesting that he reduce his fee to $250 per hour. They received no response. Pierce's attorney, apparently concerned about the tone of defense counsel's communication with the doctor, applied for a protective order to direct defendants to advance the fee demanded.

A hearing was held on the motion for protective order. Dr. Johnson did not appear. Counsel for Pierce simply reiterated his assertion that the doctor's fee was reasonable. Defendants responded by submitting—without objection from opposing counsel—three pieces of evidence supporting their challenge to the fee: a fee schedule from another of plaintiff's treating physicians showing a $250 per hour fee for deposition testimony; an order in an unrelated lawsuit that set a surgeon's deposition fee at $250 per hour; and two studies published in the September 1991 issue of *Medical Economics Journal* showing the average gross income of an orthopedic surgeon to be $466,070 per year, or $253 per hour.

The district court's oral ruling on the motion noted that treating physicians "don't want to be involved in the litigation to begin with." It then determined, based on its own experience, that a fee of $500 for the deposition testimony of an orthopedic surgeon was not "totally outrageous," and ordered its payment. Defendants sought an interlocutory appeal to challenge the ruling, which we granted. With our permission, the Iowa Medical Society (IMS) appears on Pierce's behalf as amicus curiae.

Resolution of the controversy turns on the standard by which district courts should measure the reasonableness of expert witness deposition fees under Iowa Rule of Civil Procedure 125(f).[2] Defendants contend on appeal that the district court abused its discretion when it failed to make an independent finding of reasonableness under the rule, and reached the wrong result when it found the $500 per hour fee reasonable. After addressing our scope of review, we shall consider defendants' arguments in turn.

I. The district court is vested with wide discretion in rulings on discovery matters. *Hutchinson v. Smith Lab., Inc.*, 392 N.W.2d 139, 141 (Iowa 1986). That discretion is not unlimited, however. Reversal may be in order when the court's ruling rests on grounds or for reasons clearly untenable or unreasonable, *Rowen v. LeMars Mutual Insurance Co.*, 357 N.W.2d 579, 583 (Iowa 1984), or when the record lacks substantial evidence to support the court's conclusion. *Paige v. City of Chariton*, 252 N.W.2d 433, 437 (Iowa 1977).

II. Iowa Rule of Civil Procedure 125(f) governs the fees experts may exact during discovery. The rule states in pertinent part:

> Unless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (a)(2) and (b) of this rule.... Any fee which the court requires to be paid shall not exceed the expert's customary hourly or daily fee....

Iowa R.Civ.P. 125(f).

Judging by the dearth of caselaw interpreting this provision, we surmise that most fee disputes resolve themselves without judicial intervention. Nevertheless, the dispute before us spotlights the rule's lack of guid-

---

1. Pierce also named Farm Bureau Insurance Company as a defendant due to a dispute over Pierce's underinsured motorist coverage.

2. At the outset we reject defendant Farm Bureau's contention that Iowa Code § 622.72 (1991), which caps the daily compensation for expert trial testimony at $150, is controlling. Section 622.72 does not apply to deposition fees requested during discovery, but deals only with the recovery of court costs following litigation. *See Kendall v. Lowther*, 356 N.W.2d 181, 191 (Iowa 1984); *accord Weiss v. Bal*, 501 N.W.2d 478, 482 (Iowa 1993); *Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 151 (Iowa 1992). As discussed elsewhere in this opinion, a $150 cap upon the reasonableness determination would frustrate rule 125(f)'s compensatory purpose.

ance for both litigants and judges faced with competing claims of reasonableness. Until recently, a similar situation existed with respect to the rule's federal counterpart, Federal Rule of Civil Procedure 26(b)(4)(C).[3] In *Jochims v. Isuzu Motors, Ltd.,* 141 F.R.D. 493 (S.D.Iowa 1992), however, the court adopted a framework for analyzing fee controversies that we believe merits our serious consideration.

*Jochims* involved a motor vehicle roll-over suit. The plaintiff's products liability expert—a professor with impressive credentials in aerodynamics and computer simulation—sought to charge the defendants a $500 per hour deposition fee. Defendants claimed the fee was unreasonable, particularly in view of the professor's willingness to charge the plaintiff less for his accident reconstruction and computer simulation services. Thus the court was asked to decide whether the higher fee was reasonable under the rule.

■ The court observed that the goal of federal rule 26(b)(4)(C) is to compensate experts for their participation in litigation, while preventing opposing parties from obtaining that expertise free of cost. *Id.* at 494–95. It then noted that neither the rule nor its commentary defined reasonableness by any objective standard. *Id.* at 495. Reviewing the limited authority on the point, the court adopted the following factors by which to determine whether an expert witness fee is reasonable within the meaning of the rule:

(1) the witness's area of expertise;

(2) the education and training required to provide the expert insight which is sought;

(3) the prevailing rates of other comparably respected available experts;

(4) the nature, quality, and complexity of the discovery responses provided;

(5) the fee actually being charged to the party who retained the expert;

(6) fees traditionally charged by the expert on related matters; and

(7) any other factor likely to be of assistance to the court in balancing the interests implicated by rule 26.

*See id.* at 495–96.

Arguing against adoption of the *Jochims* factors, IMS asserts that the test does not account for circumstances particular to the medical profession. It claims the factors disregard the skill level of the treating physician, the disruption of being drawn into litigation, overhead costs, and the societal importance of the physician's practice. We agree these factors are relevant but believe IMS's argument fails to account for the "other factor" prong of the *Jochims* test. No test possibly can provide for every factual contingency. The "other factor" prong is broad enough to allow evidence pertinent to a reasonableness determination yet unique to the particular fee request.

That brings us to rule 125(f)'s additional requirement that the fee "shall not exceed the expert's customary hourly or daily fee." Although defendants urge an interpretation that would limit "customary fee" to the hourly or daily fee charged for patient care and consultation, we do not believe the rule contemplates such a limit for all experts. The rule has more universal application and only seeks, in fairness, to prevent an expert from charging more for deposition time to one side of the litigation than the other.

■ We do believe, however, that a treating physician's deposition fee should bear some reasonable relationship to the physician's customary hourly charge for patient care and consultation. Unlike an expert retained only for litigation, a treating physician gains unique and firsthand knowledge through the doctor-patient relationship. When knowledge gained in that relationship bears on an issue in controversy, the treating physician assumes the obligation borne by all citizens to give relevant testimony.

Allowing treating physicians to set litigation fees greatly in excess of fees received in their daily practice raises the specter of a troublesome whatever-the-market-will-bear

---

**3.** "Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery. . . ." Fed.R.Civ.P. 26(b)(4)(C).

approach to deposition testimony. *See Jochims*, 141 F.R.D. at 496 n. 3. Rule 125(f) does not require that experts receive *less* than their customary fee from employment; but the rule should not be transformed into a vehicle for experts to avoid participation in legal actions. The rule must be interpreted to fairly accommodate the interests of all parties to discovery proceedings.

■ An agreement reached between the Iowa State Bar Association and the Iowa Medical Society concerning such fees supports our reasoning. That document recites that a physician may

> expect reasonable compensation for testimony given as an expert or treating physician either by deposition or in court. It is reasonable that the compensation reflect the time away from medical practice....

Principles of Cooperation for Attorneys and Physicians (Iowa Medical Society and Iowa State Bar Association (1993)). In other words, the fee should compensate the physician for the inconvenience of giving deposition testimony, yet it also must bear some rational relationship to time spent away from other professional duties.

Thus we conclude that when a court is asked to determine the reasonableness of a fee demanded under rule 125(f), it should measure that request by the factors cited with approval in *Jochims* and hereby adopted by this court. In the case of a treating physician, that fee should ordinarily be commensurate with the reasonable compensation lost by virtue of the doctor's required participation in the legal proceedings.

■ III. Applying this standard to the case before us, we are compelled to reverse the district court's ruling. Neither Pierce nor Dr. Johnson submitted competent evidence of the fee's reasonableness. In resistance to the request for a protective order, defendants presented evidence supporting their contention that the fee was unreasonable. Nonetheless, the court rejected defendants' allegations and ordered them to pay Dr. Johnson's fee. In so doing, the court stated:

> This doesn't appear to me to be the test case for gouging of an expert witness when you're having an orthopedic surgeon charge $500 an hour for a deposition which is certainly something I've seen many times in the practice and it doesn't appear to me to be totally outrageous.

As discussed earlier, rule 125(f) requires that an expert's deposition fee be measured by a standard of reasonableness. The court's ruling plainly rested on a finding that the fee was not "totally outrageous." By requiring the defendants, as the fee challengers, to meet this higher standard, the court misapplied the rule.

Moreover, the court erred in placing the burden of proof on defendants in the first instance. Because Pierce applied for the protective order, it was his burden to prove the allegations underlying the order; namely, that Dr. Johnson's fee was reasonable and customary under rule 125(f). *See Verschoor v. Miller*, 143 N.W.2d 385, 388 (Iowa 1966) (party who pleads and relies on affirmative of an issue must carry burden of proving it); 23 Am.Jur.2d *Depositions and Discovery* § 424 (1983) (burden of justifying protective order is on party requesting the order). Pierce's only evidence was his counsel's statement that Pierce was being charged the same fee as defendants for Dr. Johnson's deposition testimony. While the fee being charged to the expert's patient or client is one of the *Jochims* factors, this factor alone is insufficient to support a finding of reasonableness.

The court apparently grounded its order primarily on prior personal experience with expert witness fees. Based on the evidence before it, however, the court's conclusion was unfounded. This failure by the court to make an independent finding of reasonableness constitutes an abuse of discretion.

IV. *Disposition.* We are mindful of the stress, disruption, and inconvenience physicians and others may encounter when asked to give deposition testimony in an adversarial setting. We also are aware that district courts previously have lacked guidelines when exercising their considerable discretion under rule 125(f). We conclude, however, that the court's ruling on the fee cannot be supported under this record. We therefore

reverse and remand for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**